IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS C. MULVEY,<br><br>          Petitioner,<br><br>     vs.<br><br>R. BARNES, Warden, California Correctional Center,<br><br>          Respondent. | No. 2:09-cv-00448-JKS<br><br>MEMORANDUM DECISION |

Dennis C. Mulvey, a state prisoner appearing *pro se*, filed a Petition for Habeas Corpus under 28 U.S.C. § 2254.  Mulvey is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California Correctional Center.  Respondent has answered.  Mulvey has not replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

Following his conviction for Manslaughter with a gun enhancement in May 1996, Mulvey was sentenced by the Shasta County Superior Court to a determinate prison term of fifteen years.  Mulvey does not contest his conviction or sentence in this proceeding.

Mulvey was charged in a Rules Violation Report ("RVR") of possession of a deadly weapon in violation of prison regulations.[1]  In December 2006 following a prison disciplinary hearing before a Senior Hearing Officer ("SHO"), Mulvey was found guilty and assessed a 360-day forfeiture of good-time credit.  Upon completion of the administrative appeals process,[2]

---

[1] Cal. Code Regs., tit. 15, § 3006(a).

[2] Prison disciplinary actions are subject to internal administrative review at both the institutional and departmental levels.  Cal. Code Regs., tit. 15, §§ 3084.1, 3084.2, 3084.7,

Mulvey timely filed a petition for habeas relief in the Lassen County Superior Court, which denied his petition in an unreported, reasoned decision. The California Court of Appeal, Third Appellate District, summarily denied Mulvey's habeas petition without opinion or citation to authority in an unreported decision. The California Supreme Court also summarily denied Mulvey's habeas petition without opinion or citation to authority in an unreported decision on December 10, 2008. Mulvey timely filed his Petition for relief in this Court on February 11, 2009.[3]

> The facts underlying Mulvey's conviction as found by the SHO in the RVR:
>
> **Hearing testimony**: MULVEY gave the following testimony in his defense: "On the IE report, Polan answers the questions for Harvey. Harvey knows about these things, because he orders the parts. The brass wasn't shinny. It looks like it had corrosion. I believe the weapon had been there for a long time. Vargas states in her report the top of the Hot Water Dispenser was riveted on. If you remove the rivet the whole thing comes a part. It must have been stored like that. If I had put the weapon in there it would have been a lot shinier and it would have looked newer. Officer Collier asked me to fix the dispenser. My work pass shows I was assigned to work in building 2. I never thought to inspect the thing; Voc staff always inspects all of the equipment going out to the yard. The Lieutenant that heard my 115 before had a predetermined judgment of guilty before he heard it."
> **Finding**: Guilty of the Div. A-1 (8) offense POSSESSION OR MANUFACTURE OF A DEADLY WEAPON. This charge requires evidence the inmate was found in possession of something that qualifies as a deadly weapon or the inmate modified something into a deadly weapon. *Deadly weapon* means anything capable of serious or lethal injury. Possession includes both actual and constructive possession. *Constructive possession* means one person retains control or ownership while it is in the actual possession of another. Each inmate has an assigned area of responsibility and anything found within this area of responsibility is presumed to be in his possession. This finding is based upon the following preponderance of evidence:
> A. The Rule Violation Report authored by Correctional Officer K. Vargas, which states in part: On 07/05/06 at approximately 1000 hours, inmate MULVEY tried to

---

3084.9.

[3] This is the sole remedy available for the loss of prisoner good-time credits. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).

smuggle out an Inmate Manufactured Weapon in a hot water tank from Lassen Vocational Maintenance, Inmate MULVEY works as the lead plumber in Lassen Maintenance Plumbing Shop, position (PLM-L.001). Inmate MULVEY came to the Gate House to be processed out to Lassen Yard. He had a tool box and a cart with an old water Heater on it. While I was processing and searching the cart I removed the Hot Water Heater and asked MULVEY to remove the bottom plate. He tried to tell it was riveted and would not come off. His hands were shaking a little and he became nervous. I looked inside the unit and discovered a plastic bag rolled up inside. I put gloves on and removed the bag. It contained a 6" long brass rod, sharpened to a point on one end. I maintained sole possession of the evidence until I turned it over to I.S.U. staff.

B. The 837 Crime *1* Incident report authored by Correctional K. Vargas, (which provides a more detailed account of the incident) which states in part: I removed the Dispenser from the cart and asked MULVEY to remove the bottom plate so I could search inside the part. He told me it was riveted and would not come off. I again told him to remove the bottom plate that it was not riveted on. MULVEY'S hands were shaking a little as he removed the plate and he became nervous. He then handed me the Hot Water Dispenser. I put it on my desk and looked inside the unit for contraband. I saw a plastic bag rolled up inside the dispenser. I could not reach the plastic bag so I removed the upper plate with a screwdriver, by prying it back. I was then able to retrieve the plastic bag. I carefully opened the plastic bag, and there revealed an Inmate Manufactured Weapon. I measured the weapon with a ruler it was 6' long brass rod sharpened on one end. I maintained possession of the, and place [*sic*] it in to a sharps container and then into an evidence bag. I took the evidence to ISU where it was photographed and processed into evidence.

C. The four (4) photographs of the weapon that was removed from a Hot Water Dispenser that was in MULVEY'S possession at the time of the incident.

D. The photograph of MULVEY'S Tools and Equipment list that shows he was assigned to take the Hot Water Tank to building 2.

E. The Hot Water Tank was assigned to Mulvey, and was in his assigned area. *Constructive possession* means one person retains control or ownership while it is in the actual possession of another. Each inmate has an assigned area of responsibility and anything found within this area of responsibility is presumed to be in his possession.

F. Subject failed to provide the SHO any compelling evidence or statements during the hearing that would mitigate the charges against him. The SHO elects to uphold the decision of the previous hearing. A finding of guilt is appropriate.[4]

---

[4] Docket No. 12-1 at 29-30.

## II.  GROUNDS RAISED/DEFENSES

In his Petition Mulvey raises a single ground:  that the evidence is insufficient to support his conviction.  Respondent asserts no affirmative defense.[5]  Mulvey also requests this Court hold an evidentiary hearing.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the

---

[5] Rules Governing Section 2254 Cases in the U.S. Dist. Courts, Rule 5(b) (2011).

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412 (alteration added).

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-*

4

"unreasonable application" prong, a state court's application of Supreme Court precedent must be "objectively unreasonable," not just "incorrect or erroneous."[10] The Supreme Court has made clear that the objectively unreasonable standard is "a substantially higher threshold" than simply believing that the state-court determination was incorrect.[11] "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[12] In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[13] Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[14]

---

*Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

The Supreme Court recently underscored the magnitude of the deference required:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[15]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[16] State appellate court decisions that summarily affirm a lower court's opinion without explanation are presumed to have adopted the reasoning of the lower court.[17] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[18]

---

[15] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[16] *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . .").

[17] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

[18] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the superior court files a new original petition for relief in the court of appeal. If denied relief by the court of appeal, the defendant has the option of either filing a new original petition for habeas relief or a petition for review of the court of appeal's denial in the California Supreme Court.[19] This is considered as the functional equivalent of the appeal process.[20]

IV.  DISCUSSION

A.      **Evidentiary Hearing**

Ordinarily, a federal habeas proceeding is decided on the complete state-court record and a federal evidentiary hearing is required only if the trier of fact in the state proceeding has not developed the relevant facts after a full hearing.[21] In this case, Mulvey did not request an evidentiary hearing in the state courts. Thus, it cannot be said on the record that the state courts precluded him from developing the factual basis for his claim.[22] It does not appear from the record that the California courts made any independent evidentiary findings, and review in this case is based upon the findings of the SHO, who did hold a hearing developing the facts. Mulvey

---

[19] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[20] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[21] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996).

[22] *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself).

has not identified any factual conflict to resolve that would require this Court to hold an evidentiary hearing. The request for an evidentiary hearing is, therefore, DENIED.

**B.    Merits**

Mulvey contends that the preponderance of the evidence does not support a finding that he had either knowledge that the weapon was in the hot water tank, control of the hot water tank in which the weapon was found, or access to the weapon. In the institutional internal administrative review, the Deputy Warden rejected this argument:

> It is unclear what evidence that you believe has been overlooked. As you point out, custody and maintenance personnel are responsible to search their respective work areas regularly. In spite of this, contraband is still found on a regular basis. The fact that his contraband was not discovered until it arrived at the Vocational Gate does not mean that you can not be held responsible.
> As the Lead Inmate Plumber, you would have direct knowledge of not only what jobs were scheduled, but what tools and parts would be necessary to complete the job. In the I.E. report you ask C/O Collier if he asked you to replace the hot water dispenser in Building # 2. C/O Collier stated that he did. This indicates that you knew in advance that a replacement hot water heater would be necessary.
> The fact that your toolbox is locked in transit and that you are directly supervised while utilizing the tools is true. It is also true that between your shop and your assigned project, you are unsupervised. The weapon could have been passed off, or secreted anywhere in between your shop and Building #2.
> You claim that the plates on the hot water heater are [*sic*] riveted, yet the hot water heater that you were transporting was not. You also claimed that the lower plate was riveted to the R.E., when she could plainly see that it was not. The fact that she was unable to reach the weapon from the lower plate does not mean that it was impossible to reach. Also of note is the fact that a tool was not required to remove the bottom plate. It could have been removed on the yard as well.[23]

In rejecting Mulvey's argument, the Lassen County Superior Court held:

> [Mulvey], an inmate at the California Correctional Center, challenges his guilty finding in disciplinary proceedings at said institution upon charges of possession of an inmate manufactured weapon found inside a water heater he was transporting. He alleges he had no knowledge of the weapon's presence and lacked

---

[23] Docket No. 12-1 at 53.

the tools to extract it; hence the guilty finding lacked evidentiary support. The record of the proceeding, attached as an exhibit to the petition, reflects that [Mulvey] became nervous when asked by a correctional officer to remove the bottom of the heater, falsely asserting that it was riveted in place. The heater was going to be installed in a location to which [Mulvey], as a lead inmate plumber, could reasonably expect future access in the course of his duties. Revocation of good time credits is not comparable to a criminal conviction and neither the amount of evidence necessary to support such a conviction nor any other standard greater than the "some evidence" rule applies. (*Superintendent v. Hill* (1985) [472 U.S.] 445, 455.) The petition does not show that there is no evidence to support the in-prison administrative disciplinary decision.[24]

Prison disciplinary proceedings are not part of a criminal prosecution; therefore, the full panoply of rights due to a defendant in such a proceeding do not apply.[25] In the context of prison disciplinary proceedings, the minimum requirements of due process are: (1) advance written notice of the charges brought against the inmate; (2) the right to call witnesses and present documentary evidence in defense; (3) the factfinder's written statement of the evidence relied upon and the reasons for the disciplinary action taken,[26] and (4) the findings must be supported by some evidence in the record.[27]

Reduced to its basic premise, Mulvey's argument is that the necessary elements of the offense, as determined under California law, were not proven by a preponderance of the evidence. The fatal flaw in Mulvey's argument is that preponderance of the evidence is not the applicable standard. The applicable constitutional standard by which federal habeas courts are bound in reviewing state prisoner disciplinary findings is whether "there is *any* evidence in the

---

[24] Docket No. 12-2 at 2.

[25] *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see generally Edwards v. Balisok*, 520 U.S. 641 (1997).

[26] *Wolff*, 418 U.S. at 563-66.

[27] *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

9

record that could support the conclusion reached by the disciplinary board."[28]  Neither the state courts nor this Court are permitted to independently assess the credibility of the witnesses or re-weigh the evidence.  Applying the some evidence standard in this case, this Court cannot find that the decision of the Lassen County Superior Court was either contrary to or an unreasonable application of *Hill*, or an unreasonable determination of the facts in light of the evidence presented to the state court.[29]

Mulvey further argues that he was denied the right to call a crucial witness, the plumbing supervisor Mr. Harvey.  First, this Court notes that the record indicates that Mulvey waived all witnesses at the hearing.[30]  Mulvey did, however, submit to an Investigative Employee questions to be answered by staff.[31]  The Investigative Employee's report contained the following with respect to the questions posed by Mulvey to Mr. Harvey:

> On 12-22-06, Mr. Polan [*sic*] answered the following questions for Mr. Harvey, due to the fact that Mr. HARVEY has not be [*sic*] Lassen Maintenance Plumbers for approximately nine months.  I was unable to ask Officer Vargas any further questions [due] to her absence from work on this date.
> **STAFF WITNESSES**
> **QUESTION FOR R. HARVEY**
> Q). Are the hot water tanks under lock and key?
> A). They are locked in the Office, once the office is unlocked, inmates have access.
> Q). Who may have access to hot water tanks?

---

[28] *Id.* at 455-56.

[29] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[30] Docket No. 12-1 at 28.

[31] Under California's prison disciplinary procedure an inmate is entitled to the appointment of an investigative employee who gathers information, questions staff and inmates, screens witnesses, and submits a written, non-confidential report to the SHO, a copy of which must be provided to the inmate at least twenty-four hours prior to the hearing.  Cal. Code. Regs., tit. 15, §§ 3315(d), 3318(a).

> A). Staff and Inmate Plumbers.
> Q). Are the water tanks we use riveted shut bye [sic] factory, Upper [sic] and lower plate?
> A). No.
> Q). Do Inmates or himself inspect parts and hot water tanks for contraband going to or from Voc area?
> A). Voc Correctional Staff search Inmates Leaving and entering the Voc area.
> Q). Who's job is it to inspect items for contraband?
> A). All staff
> Q). On Inmates [sic] job description does it say any where that Inmate's [sic] are responsible or reliable for checking parts and equipment for contraband?
> A). Unable to obtain a copy of Inmate Plumber job description, because Mr. Polan did not the keys to the maintenance Plumbers time cards.
> Q). Do Inmates carry keys to master locks on tool box's [sic]?
> A). No.
> Q). In the past have they or other Inmates ever been delayed under scrutiny of C/O Vargas?
> Q). And has she been known to exaggerate and create tension or nervousness among Inmates and free staff?[32]

Specifically, Mulvey claims that Mr. Harvey could and would have shown exactly what Mulvey's job description was and whether or not water heaters are usually, occasionally, or never riveted. Although the Lassen County Superior Court did not address the issue, the Deputy Warden as part of the internal institutional review did.

> You believe that your due process has been violated because Mr. Poulan, Staff Electrician was called upon to answer your questions instead of Mr. Harvey, Staff Plumber. I conducted an interview with Mr. Poulan on February 8, 2007 and learned the following. During the time that you were assigned to the Plumbing shop, Mr. Harvey was working out of class at the Boiler Plant. He only reported to the Plumbing shop once a week, unless there was an emergency. During this time Mr. Poulan would schedule the inmates assigned to the Plumbing department to the most basic assignments and act as an indirect Supervisor. Mr. Poulan is well versed in maintenance procedures and very familiar with the Plumbing Shop. He is qualified to answer the basic questions that were posed to Mr. Harvey.[33]

---

[32] Docket No. 12-1 at 35-36.

[33] Docket No. 12-1 at 53.

11

While Mr. Harvey may have been able to testify to both Mulvey's job description and whether or not water heaters are usually, occasionally, or never riveted, how he would have testified and whether that testimony would have assisted Mulvey is left to speculation and surmise. It is as inexplicable as it is unexplained, just how anything Mr. Harvey could have testified to would have changed the outcome. More tellingly though is that Mulvey has presented no evidence that Mr. Poulan, who testified that bottoms to water heaters were not riveted, was not qualified to provide the answer or that he was incorrect.[34] The fact that Mr Poulan, not Mr. Harvey, answered the questions propounded by Mulvey neither denied Mulvey due process, nor prejudiced his defense.

---

[34] It was also obvious to the officer that the bottom of the water heater was not riveted.

V.  CONCLUSION AND ORDER

Mulvey is not entitled to relief.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[35]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[36]

The Clerk of the Court is to enter judgment accordingly.

Dated: February 3, 2012.

> /s/ James K. Singleton, Jr.
> JAMES K. SINGLETON, JR.
> United States District Judge

---

[35] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[36] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

13